IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALTON D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 16-cv-1081 |
| | ) | |
| TOM WOLF, et. Al. , | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION and ORDER**

This case was referred to United States Magistrate Judge Cynthia Reed Eddy for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(A) and (B), and Local Rule of Civil Procedure 72. Presently before the Court is Plaintiff Alton D. Brown's request for Preliminary Injunctive Relief. A hearing on the request was held on February 23, 2021. ECF No. 379. Testifying at the hearing were Eric Jetson Lyons, Dr. Mathew Miceli, Andre Jacobs, and Alton Brown. Numerous exhibits were entered into evidence at the hearing, and the Court also considered numerous exhibits filed on the record. For the reasons that follow, the request for preliminary injunctive relief will be denied.

**I.   Background**

Mr. Brown initially sought Preliminary Injunctive Relief on September 1, 2017. ECF No. 17. The initial motion sets forth the basic subject matter relevant to the request for injunctive relief. In summary, Mr. Brown was diagnosed with prostate cancer in January 2016. He was told of his diagnosis, offered an oral medication treatment protocol and was told treatment would begin after he underwent a biopsy. Mr. Brown, as is his right, declined to proceed with the

1

suggested course of treatment or to undergo a biopsy.[1] Instead, Mr. Brown wanted to review his pertinent medical records, review other medical information, and to take sufficient time to consider his treatment options. Mr. Brown alleges that he is not being given enough information to allow him to provide his informed consent.[2] He alleges that he is being denied such information as retaliatory punishment. He further alleges that Defendants have unfairly characterized Mr. Brown's desire to obtain and review medical information before deciding on a treatment, as Mr. Brown "refusing treatment." Mr. Brown alleges that the failure to provide him with adequate information has resulted in his inability to be treated and his inability to make an informed decision regarding the recommended treatments. In this initial request for preliminary injunctive relief, Mr. Brown sought to enjoin prison officials from retaliating against him for his decisions as to his medical treatment.

As the case has progressed and factual circumstances have shifted, Mr. Brown has supplemented and updated his initial request. The Court, as well as Defendants, have recognized that Mr. Brown's request for preliminary injunctive relief and his arguments and evidence in

---

[1] Prisoners have a constitutionally protected Fifth and Fourteenth Amendment liberty interest in remaining free from unwanted medical treatment. Cruzan by Cruzan v. Dir., Missouri Dep't of Health, 497 U.S. 261, 278 (1990) ("The principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions"); Riggins v. Nevada, 504 U.S. 127, 134 (1992) (prisoner's "interest in avoiding involuntary administration of antipsychotic drugs was protected under the Fourteenth Amendment's Due Process Clause"); Washington v. Harper, 494 U.S. 210, 221-222 (1990) (prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment.").

[2] "Prisoners have a right to such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment, as well as a reasonable explanation of the viable alternative treatments that can be made available in a prison setting." White v. Napoleon, 897 F.2d 103, 113 (3d Cir. 1990). "However, that right is limited, and medical staff 'simply must provide a prisoner with such information as a reasonable patient would find necessary to making an informed decision regarding treatment options.'" Dykeman v. Ahsan, 560 F. App'x 129, 132 (3d Cir. 2014) (quoting Pabon v. Wright, 459 F.3d 241, 250 (2d Cir. 2006)).

2

favor of his request are contained within various pleadings throughout the docket. The Court has considered the following pleadings as related to Mr. Brown's request for preliminary injunctive relief:

- Motion for Preliminary Injunctive Relief:  ECF No. 17.
- Motion to Expedite Adjudication of the Motion for Preliminary Injunctive relief:  ECF No. 26.
- Defendants' Response Briefs:  ECF Nos. 38 & 41.
- Mr. Brown's Reply Brief:  ECF No 114.
- Defendants' Supplemental Briefs:  ECF Nos. 125 & 128.
- Mr. Brown's Supplemental Petitions in support of his request for injunctive relief:  ECF Nos. 140, 141, 148, 150, 191, 192, and 273.
- Mr. Brown's Motion for a Hearing:  ECF No. 223.

Mr. Brown has also referred to his request for preliminary injunctive relief in many other filings that were not solely concerned with his request for preliminary injunctive relief, all of which have been read and considered by this Court. A review of all such pleadings resulted in this Court summarizing Mr. Brown's request for preliminary injunctive relief, and the scope of the hearing, as follows:

> the subject matter of the hearing is limited to Mr. Brown's allegations regarding the alleged failure to treat his prostate cancer and related health problems, the actual treatment provided for Mr. Brown's prostate cancer, the alleged failure to properly manage Mr. Brown's pain and symptoms, the alleged denial of medical care, and the alleged retaliatory conduct specifically related to Mr. Brown's medical care and treatment (including conduct allegedly designed to discourage Mr. Brown from accepting medical care). The issue of retaliation in the upcoming hearing is also limited to specific alleged retaliatory conduct directed at Mr. Brown solely as it relates to his medical care and treatment at SCI-Fayette.

Mem. Order, Feb. 4, 2021, at 2-3, ECF No. 366.

A. **Relevant Evidence**

The evidence related to the request for preliminary injunctive relief, as filed within the docket throughout the course of this action and as introduced during and after the hearing, is substantial. Following the hearing, Mr. Brown filed a "Notice of Documents of Court Records that Support his Evidence Produced at 2/23/21 Hearing," in which Mr. Brown attached sixty-eight records. ECF Nos. 389, 394.[3] The Court has also considered this evidence. Mr. Brown has also filed a "Request for Court to Consider Exhibits related to Injunction Hearing." ECF No. 419. In this Request, Mr. Brown attaches two Inmate's Request to Staff Members forms (DC-135A). ECF Nos. 419-1 & 419-2. The Court has also considered this evidence, and therefore will grant the Motion to Consider said exhibits. Mr. Brown also filed two Motions directed to the Magistrate Judge that address exhibits relevant to his request for preliminary injunctive relief. ECF Nos. 395 & 398. In ECF No. 395, Mr. Brown requested reconsideration of the Magistrate Judge's Order denying his "Motion for Potentially Life Saving Relief (Inter Alia) and Request for Production of Documents" filed at ECF No. 340. The Magistrate Judge had denied said Motion because the issues raised in it were "presently before the Court on the preliminary injunction record." ECF No. 382. Mr. Brown attached several exhibits to said Motion (ECF No. 340), and this Court has relied upon the attached exhibits in considering the preliminary injunction motion, including exhibits within the record but which were not specifically introduced as evidence during

---

[3] In this "Notice," Mr. Brown explains, among other things, how the exhibits relate to his request for preliminary injunctive relief and how certain exhibits refute or impeach Dr. Miceli's testimony. Mr. Brown also explains the proper interpretation of certain exhibits, explains how some prior submitted exhibits were not complete or were only included in error, and explains how some attached exhibits were originally meant to be included in support of his request for injunctive relief. He also refers to and/or incorporates relevant pleadings and exhibits from Civil Actions 17-321 & 18-1130, which were consolidated with the present action.

the preliminary injunction hearing.  In ECF No. 398, Mr. Brown moved for an "Order Requiring the Defendants to [Provide Mr. Brown] with all Medical Records from 2019- 2021."  In response, the Magistrate Judge noted that Mr. Brown's medical records were introduced into evidence at the preliminary injunction hearing, and that he had filed Objections to said medical records.  ECF No. 402 (referring to Objections filed at ECF No. 396).  Said Objections are addressed below.

In summary, the Court has reviewed all evidence related to Mr. Brown's request for preliminary injunctive relief and has considered all relevant and admissible evidence in determining whether preliminary injunctive relief is warranted.  The evidence will be considered insofar as it is relevant to Mr. Brown's allegations regarding the alleged failure to treat his prostate cancer and related health problems, the actual treatment provided for Mr. Brown's prostate cancer, the alleged failure to properly manage Mr. Brown's pain, symptoms and side-effects, the alleged denial of medical care, and the alleged retaliatory conduct specifically related to Mr. Brown's medical care and treatment (including conduct allegedly designed to discourage Mr. Brown from accepting medical care).

B.  **Objections to the Evidence**

Both Mr. Brown and the Defendants have challenged portions of evidence introduced at the hearing.  As directed by the Court, the Medical Defendants[4] filed a "Concise Statement of Position on Plaintiff's Exhibits from February 23, 2021 Hearing on Plaintiff's Motion for Preliminary Injunction" (ECF No. 408), to which Mr. Brown filed a Response (ECF No. 417). Mr. Brown filed "Objections to Defendants' Medical Record Exhibits for the Preliminary

---

[4] The Medical Defendants are Dr. Alpert, Pa. N. Austin, Correct Care Solutions, Jay Cowan, Darla Cowden, Mike Hice, Byunghak Jin, Dr. Carl Keldie, S. Liberatore, Dr. Malhi, Dr. Miceli, Elon Mwaura, and Dr. Park.

Injunction Hearing of 2/23/21" (ECF No. 396), to which the Medical Defendants filed a Response (ECF No. 410). Mr. Brown then filed a Reply to the Response.

To the extent consideration of Mr. Brown's Exhibits 1, 5-7, 9-11 is limited to showing Mr. Brown's complaints as raised in his requests for preliminary injunctive relief and in his Grievances, the Medical Defendants have no objection. The Medical Defendants do object to the use of said exhibits to the extent they are offered/intended to detail Mr. Brown's medical treatment, history, diagnosis, or any medical opinions of his treating providers. As to the Grievance exhibits, the Medical Defendants object to said exhibits insofar as they are intended to detail Mr. Brown's personal view of the facts regarding his medical treatment, history, diagnosis, medical opinions, and similar matters because the Medical Defendants assert such Grievances are not evidence of the truth of such matters.

In response, Mr. Brown states that Exhibit 1, a July 17, 2019 request slip, was identified by Dr. Miceli and was introduced to show that Mr. Brown was denied medical care for the adverse side effects of medication used for hormone therapy. In the July 17, 2019 request slip, Mr. Brown states that he is having adverse side effects of hot flashes and urinary infection, that he continues to have difficult and painful urination, and that he requested a new pain medication. Dr. Miceli's written response to Mr. Brown's Inmate Request was, "Expected Side effects." Thus, the Court will consider Exhibit 1 as Mr. Brown's proof that he requested treatment for his side effects and related pain and that Dr Miceli told him that the side effects were expected. The Medical Defendants' Objections to admission of Exhibit 1 are overruled. Exhibit 1 is admitted into evidence.

Next, Mr. Brown argues that the Grievances in Exhibits 5-7 and 9-11, along with the prison's responses to said Grievances, are all medically based grievances which are investigated by Medical Department Staff and reviewed by the Health Care Services Director. The Court will consider the grievances and responses to Grievances to the extent that they are admissible and relevant to Mr. Brown's request for preliminary injunctive relief. The Medical Defendants' Objections are overruled. Exhibits 5, 6, 7, and 9 are admitted into evidence (Exhibits 10 & 11 were admitted during the hearing).

Finally, the Medical Defendants object to Exhibits 2, 3, 4, and 8. Exhibit 2 is a history of Plaintiff's criminal case and appeal litigation. Exhibits 3, 4 and 8 are publications from the American Cancer Society, the National Institute of Health, and a section from the Pennsylvania Code. At the hearing, Dr. Miceli stated that the National Institute of Health document (Exhibit 4) was authoritative. The Court will consider such exbibits to the extent they are admissible and relevant to Mr. Brown's request for preliminary injunctive relief. The Medical Defendants' Objections are overruled. Exhibits 3 and 4 are admitted into evidence (Exhibits 2 & 8 were admitted during the hearing).

The Medical Defendants introduced 239 pages of Mr. Brown's Medical Records as Defendants' Exhibit A. ECF No. 380 (attaching the 239-pages of documents). Mr. Brown objects to the Medical Defendants' Exhibit A for several reasons. First, he objects that the documents within Exhibit A are not identified by page number. Next, he objects that the documents are computer printouts instead of the actual medical records. He further objects to redactions made in some of the documents. He also argues that the Medical Defendants intentionally chose not to introduce medical records at the hearing in an attempt to prevent Mr.

Brown from relying on said evidence to support his position. Finally, he objects to the introduction of the Medical Defendants' Exhibit A on the grounds that the Court denied Mr. Brown's motions seeking production of his medical records. The Medical Defendants assert that Exhibit A consists of the entirety of Mr. Brown's medical chart, with the exception of redacted mental health information and any information that was not available at the time of the hearing (such as CT and Bone Scan results from February 8, 2021 and February 17, 2021). The Court has reviewed the Medical Records. There is no valid reason to justify exclusion of Exhibit A. Mr. Brown's Objections are overruled. The Medical Defendants' Exhibit A is admitted into evidence.

On April 13, 2021, Mr. Brown also filed a post-hearing "Motion for Court Order", in which he:

> (1) expresses his concern that a memo introduced at the hearing regarding Housing in the Psychiatric Observation Cells has gone missing;
>
> (2) speculates that the Defendants are intentionally "sabotaging" his correspondence with the American Cancer Society (ACS), because he has not received a document related to side-effects of hormone therapy that he had requested, which document the ACS told him would be forthcoming; and
>
> (3) requests that the Court issue an order directing that Mr. Brown be sent to the UPMC Hillman Cancer Center for medical care.

ECF No. 412. With regard to the memo concerning the Psychiatric Observation Cells, Mr. Brown's evidence does contain a memo titled, "POC Admission Procedure." This memo was contained within Mr. Brown's Exhibit 4. In addition, while the Court understands Mr. Brown's argument against the use of the Psychiatric Observation Cells in relation to medical treatment, the Court concludes that resolution of the request for injunctive relief is not dependent on the housing conditions in the Psychiatric Observation Cells. Next, as there is no evidence to establish sabotage regarding the ACS's correspondence with Mr. Brown, the Court declines to take any

action. Finally, the Court has no basis or authority to Order the prison to send Mr. Brown to UPMC Hillman Cancer Center. Accordingly, the Motion filed at ECF No. 412 will be denied.

## II.     Applicable Law

The Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(2), limits the authority of courts to enjoin the exercise of discretion by prison officials, providing, in part, that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Injunctive relief in any form is an extraordinary remedy that should be granted in "limited circumstances." AT & T v. Winback and Conserve Prog. Inc., 42 F.3d 1421, 1427 (3d Cir. 1994). Four factors govern a district court's decision whether to issue a preliminary injunction: "'(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting preliminary relief will be in the public interest.'" Am. Exp. Travel Related Services, Inc. v. Sidamon–Eristoff, 669 F.3d 359, 366 (3d Cir. 2012) (quoting Crissman v. Dover Downs Entertainment Inc., 239 F.3d 357, 364 (3d Cir. 2001). The burden lies with the plaintiff to establish every element in his favor, otherwise the grant of a preliminary injunction is inappropriate. P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005).

Where the requested preliminary injunction "is directed not merely at preserving the status quo but … at providing mandatory relief, the burden on the moving party is particularly heavy." Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980). Mandatory injunctions should be

issued only sparingly. United States v. Price, 688 F.2d 204, 212 (3d Cir. 1982). Thus, a request for any form of mandatory prospective relief in the prison context "must always be viewed with great caution because judicial restraint is specially called for in dealing with the complex and intractable problems of prison administration." Goff v. Harper, 60 F.3d 518, 520 (3d Cir. 1995). Inmates have frequently sought preliminary injunctive relief compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit. Such requests are rarely embraced by the courts, with courts frequently holding that the inmates have not shown that they are entitled to use a motion for preliminary injunction as a vehicle to compel prison officials to provide them with some specific relief and services pending completion of their lawsuits. See, e.g., Goodwin v. Glunt, 2013 WL 5202088 (W.D. Pa. 2013); Messner v. Bunner, 2009 WL 1406986 (W.D. Pa. 2009); Brown v. Sobina, 2008 WL 4500482 (W.D. Pa. 2008); and Emile v. SCI-Pittsburgh, 2006 WL 2773261, at *6 (W.D .Pa. 2006). In particular, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical courses of treatment for inmates. In such instances, courts have typically declined such requests citing the inmate's failure to either demonstrate irreparable harm; Rivera v. Pennsylvania Dep't Of Corrections, 346 F. App'x 749 (3d Cir. 2009), Rush v. Correctional Medical Services, Inc., 287 F. App'x 142 (3d Cir. 2008), or show a likelihood of success on the merits. Quinn v. Palakovich, 204 F. App'x 116 (3d Cir. 2006).

### III. Discussion

Mr. Brown alleges that the Medical Defendants have failed to properly treat his prostate cancer and related health problems, as well as respond to his related pain and side effects. He alleges that the Medical Defendants have failed to properly manage his pain and symptoms and

have actually denied him medical care. Further, he alleges that the above conduct is undertaken in retaliation for Mr. Brown's insistence on obtaining relevant medical information to make an informed decision as to treatment and in retaliation for his litigious behavior. He further alleges that the Defendants are retaliating against him in a manner designed to discourage him from accepting medical care. He alleges that as a result, he suffers physical pain, mental and emotional suffering, and an accelerated timeline of the progression of his diseases that will ultimately lead to an early and preventable death. At the beginning of the hearing, Mr. Brown explained that he was seeking injunctive relief related to his medical care in the form of an Order of Court that would:

- Direct the Defendants to provide him with medical care for his cancer,

- Direct the Defendants to provide medical care for the side effects of hormone therapy,

- Direct the Defendants to provide medical care for pain relief,

- Direct the Defendants to provide medical care for infections he contracted during surgery,

- Direct the Defendants to not place Mr. Brown into a Psychiatric Observation Cell related to the provision of medical care, and

- Direct the Defendants to place Mr. Brown in the general prison population, instead of the Restricted Housing Unit, which he avers will permit him to receive better medical care.

The Court does not in any way diminish Mr. Brown's deeply held concerns, as a patient, about the medical treatment he receives for his serious conditions, troubling side-effects, and pain. However, after review of the pleadings, the evidence of record on the docket prior to the hearing, the evidence and testimony introduced at the hearing, and the pleadings and evidence entered after the hearing, and in light of the exacting standards for issuing a preliminary injunction, the

11

Court concludes that Mr. Brown's request for injunctive relief must be denied because he cannot show a reasonable likelihood of success on the merits of his claims.

Mr. Brown's claims relevant to his request for injunctive relief allege, in one way or another, that the Defendants have refused to provide him with medical treatment, have been deliberately indifferent to his serious illnesses, related side-effects and pain, and have engaged in conduct designed to harm his ability to obtain medical care for his serious conditions in violation of the Eighth Amendment. Mr. Brown claims that the Defendants have refused to provide him with access to a pain specialist or to consider alternate medications; that the Defendants have refused to provide him with medical care for his prostate cancer, side-effects from hormone therapy and related conditions; that the Defendants have committed medical mistreatment related to Mr. Brown's prostate biopsy; that, through the use of Psychiatric Observation Cells, the Defendants have prevented Mr. Brown from receiving medical care for bacterial infections and from receiving medical care in general; and the Defendants have refused to provide medical care in accordance with Policy 13.8 and the Settlement Agreement with the Disability Network.

"Although negligence in the administration of medical treatment to prisoners is not itself actionable under the Constitution, failure to provide adequate treatment is a violation of the eighth amendment when it results from 'deliberate indifference to a prisoner's serious illness or injury.'" Inmates of Allegheny Cty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). An Eighth Amendment violation can be "manifested by prison doctors in their response to the

12

prisoner's needs" or by "prison guards in intentionally denying or delaying access to medical care." Estelle, 429 U.S. at 104–05. Deliberate indifference to a prisoner's medical needs must rise above the level of "mere negligence," Wilson v. Seiter, 501 U.S. 294, 305 (1991), and cannot be "inadvertent," Estelle, 429 U.S. at 105. The "deliberate indifference standard 'affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients,' we must 'disavow any attempt to second-guess the propriety or adequacy of [their] particular course of treatment' so long as it 'remains a question of sound professional judgment.'" Pearson v. Prison Health Serv., 850 F.3d 526, 538 (3d Cir. 2017) (quoting Pierce, 612 F.2d at 762).

Here, the record evidence demonstrates that the Defendants have either provided Mr. Brown with direct medical treatment or they have provided Mr. Brown with opportunities to accept medical treatment for his conditions, symptoms, side-effects and pain. Despite Mr. Brown's assertions to the contrary, there is no evidence that the Defendants have refused to medically address his serious medical conditions and related side-effects and pain. At the preliminary injunction stage of this action, following thorough review of the evidence of record, as well as the testimony and evidence introduced at the hearing and subsequent thereto, this Court concludes that the Defendants have responded to Mr. Brown's medical requests. Mr. Brown's Inmate's requests to Staff, Mr. Brown's Grievances, the Defendants' Responses to the Grievances and Mr. Brown's actual Medical Records, suggest a severe and profound disagreement and disconnect between the Defendants' attempts to treat Mr. Brown and Mr. Brown's views of how he should be medically treated. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (disagreement as to proper medical treatment insufficient to state Eighth Amendment claim). For example, the

parties disagree about whether the medical treatment Mr. Brown is receiving is appropriate, whether Mr. Brown has been given sufficient and relevant materials to review in order for him to decide to consent to or refuse proposed medical treatment, whether he has been given sufficient time to review such materials in conjunction with his own medical records, whether the Defendants are withholding appropriate medical treatment, and whether the Defendants are appropriately managing and treating his side-effects, pain and infection.  However, the record evidence does not show that the Medical Defendants or the Commonwealth Defendants have prevented or denied Mr. Brown from receiving appropriate medical treatment.  As previously stated, the disputes here concern Mr. Brown's preferred treatments, preferred protocols, preferred types or dosages of medicine, and the like.  The differences/disagreements between Mr. Brown and the Defendants do not, at this stage, evidence a "clear showing" that Mr. Brown is likely to succeed on the merits of his Deliberate Indifference Eighth Amendment claims.  Milhouse v. Fasciana, 721 F. App'x 109, 111 (3d Cir. 2018) (no strong showing of likely success on the merits where "it appeared that his complaints concerned disagreement with the treatment he was receiving, rather than deliberate indifference").[5]

      Finally, Mr. Brown requests preliminary injunctive relief to order the Defendants to designate him for placement in the general prison population.  Such request requires the Court to intrude on prison administration matters implicating the prison's interest in maintaining the

---

[5] Mr. Brown also alleges denial of medical care because Defendants refused to allow Mr. Brown access to medical marijuana and supplements.  Mr. Brown did not plead this claim until his latest Amended Complaint.  It is not related to his claims of imminent danger for which he was granted in forma pauperis status. Moreover, even if this claim were related to his imminent danger claims, the Court has previously explained to Mr. Brown that the use of medical marijuana in prisons in Pennsylvania is not permitted. Therefore, he cannot show a likelihood of success on this claim.

operation, safety, and security within the prison. Rush, 287 F. App'x at 144. Such requests for mandatory injunctive relief "must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." Goff, 60 F.3d at 520. Given the deference accorded to prison officials in such matters, the evidence at this stage does not show sufficient likelihood of success on the merits.

Having concluded that preliminary injunctive relief is not warranted on the basis that Mr. Brown cannot show a likelihood of success on the merits, the Court need not address the remaining factors. Ferring Pharms., Inc. v. Watson Pharms., Inc., 765 F.3d 205, 210 (3d Cir. 2014) ("The failure to establish any element ... renders a preliminary injunction inappropriate") (internal quotation marks and citations omitted).

## IV.   Conclusion

After careful review of the pleadings, the extensive evidence of record, and the evidence and testimony introduced at the hearing and subsequent thereto, Mr. Brown's request for preliminary injunctive relief is not warranted because he is unable to demonstrate a likelihood of success on the merits.

Accordingly, the following Order is hereby entered.

## ORDER

AND NOW, this 12th day of August 2021, as set forth in the Opinion accompanying this Order, it is hereby ORDERED that Alton Brown's Motion for a Preliminary Injunction, as supplemented by his additional pleadings and petitions in support of his request for a preliminary injunction, is DENIED.

IT IS FURTHER ORDERED that Mr. Brown's Motion for Court Order (ECF No. 412) is DENIED and Mr. Brown's Request for Court to Consider Exhibits related to Injunction Hearing, (ECF No. 419) is GRANTED.

                                                                                                                *Marilyn J. Horan*  
                                                          Marilyn J. Horan  
                                                          United States District Court Judge

cc:     Alton D. Brown, pro se  
         DL-4686  
         SCI Fayette  
         48 Overlook Drive  
         LaBelle, PA 15450-1050  
         (via U.S. First Class Mail)